UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

**DANA WASHINGTON**, individually and
on behalf of all others similarly situated,

    *Plaintiff*,

vs.

**CLASS ACTION**

**INTEGON PREFERRED INSURANCE COMPANY,** a
North Carolina Corporation,

    *Defendant*.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Dana Washington ("Plainitff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Integon Preferred Insurance Company, ("Integon Preferred" or "Defendant"), and in support states:

1. This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued for auto physical damage (the "Insurance Policy"),[1] including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." The term "actual cash value" is defined in the Insurance Policy as "the fair market value of the stolen or damaged property at the time of loss." *See* **Exhibit A**, at 1. The promise to pay the ACV of a total-loss vehicle requires payment of mandatory regulatory taxes, costs and fees (Full Total Loss Payments or "FTLP") required to replace the vehicle.

---

[1] Plaintiff's Insurance Policy is attached hereto as Exhibit A.

2. Defendant is an auto insurance carrier operating in Florida. One of the coverages Defendant offers is comprehensive (or "other than collision") and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff but thousands of other putative class members ("Class Members") amounts Defendant owed its insureds concerning total loss vehicles insured with comprehensive and collision coverage.

3. The FTLP includes the adjusted vehicle value (or "Settlement Value"), plus sales tax of 6% (plus local surtax) of the Settlement Value, plus $75.25 in title transfer fees and $4.60 in registration (tag) transfer fees, less any applicable deductible and/or salvage-retained value.

4. This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to make FTLP to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

5. Specifically, as a matter of uniform process and procedure, Defendant fails to include title transfer fees, tag transfer fees, and/or sales taxes (FTLP) when making payment to its insureds after the total loss of an insured vehicle.

6. Plaintiff brings a claim for breach of contract based on Defendant's practice of failing to include sales tax, title transfer fees and tag transfer fees notwithstanding its contractual obligation to do so.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

8. Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## **THE PARTIES**

9. At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Orange County, FL.

10. At all times material hereto, Defendant is and was a corporation located in the State of North Carolina and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Orange County, Florida. Defendant's principal place of business and headquarters is located in the State of North Carolina.

## **FACTUAL ALLEGATIONS**

11. In the Insurance Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured.

12. Defendant's standardized policy language as to coverage for ACV of total loss vehicles, and all other material clauses and sections, is present and virtually identical in every auto policy issued by Defendant in Florida during the relevant time period.

13. The promise to pay an insured the ACV of a total-loss vehicle includes an obligation to pay state and local regulatory fees and taxes for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include sales tax, title transfer fees and tag transfer fees, each of which are mandatory fees imposed by the State of Florida, and are necessarily incurred in replacing a total-loss vehicle.

14. At all times material hereto, Plaintiff owned a 2005 Chrysler 300 Touring, VIN # 2C3AA53G55H655429-9HA632 (the "Insured Vehicle").

15. At all times material hereto, the Insured Vehicle was insured under the Insurance Policy issued by Defendant.

16. On or about September 19, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 2553391-001 (the "Claim").

17. Following the filing of the Claim, a third-party program, WorkCenter Total Loss, determined that the Insured Vehicle had a total valuation of $3,234.49. *See* **Exhibit B** (Vehicle Valuation Report).

18. No amount for taxes, title transfer fee or tag transfer fee was included in the amount listed in the WorkCenter Total Loss Valuation Report. *See Id* at 1.

19. Defendant then provided the total value amount as determined by WorkCenter Total Loss of $3,234.49, and subtracted the deductible of $500.00, for a final payment of $2,734.49 to Plaintiff. *See* **Exhibit B** at 1.

20. Defendant's payment of $2,734.49 did not include any amounts for title transfer, tag transfer, or sales tax and was thus not a FTLP in breach of its contract with Plaintiff, which promised to pay the ACV of the total loss vehicle.

21. Sales tax, title transfer fees and tag transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

22. Upon information and belief, Defendant, pursuant to a standard and uniform business practice, never makes FTLP to insureds after a total-loss to an insured vehicle,

notwithstanding its contractual obligation to pay the ACV of the vehicle in the event of a total-loss.

23.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.

24.     Florida law requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer a license plate or tag is no less than $4.60.

25.     Florida imposes sales tax of 6% on the purchase of any vehicle. Additionally, most counties impose a local surtax of up to 2% on the first $5,000 of any vehicle purchase.

26.     Defendant breached its Insurance Policy with Plaintiff by failing to pay any amount for sales tax, title transfer fees, and tag transfer fees when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle. Such failure constituted a breach of the insurance policy and contract in that it was not the FTLP promised in the Policy.

27.     Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE POLICY

28.     Pursuant to the Insurance Policy, under the section entitled "Coverage for Damage to your Auto" Defendant promises to pay for "direct and accidental loss to your covered auto or non-owned auto, including their equipment." *See* **Exhibit A** at 8.

29.     The "covered auto" includes "any auto shown in the Declarations." *Id.* at 1.

30.     Under a provision entitled "Limit of Liability," Defendant states, in relevant part, that the limit of liability is the actual cash value of the property. *See Id.* at 10.

31. The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

32. ACV is defined as "the fair market value of the stolen or damaged property at the time of loss." *Id*. at 1.

33. Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding sales tax or state and local regulatory fees from ACV; (2) any provision deferring payment of the sales tax or state and/or local regulatory fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all in order to receive payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving state and regulatory sales tax and/or fees; or (5) any provision linking the amount of ACV state and regulatory sales tax and/or fees to a particular replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

34. According to Defendant's policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid for the total-loss vehicle (or the amount paid, if any). Instead, in exchange for the premiums paid by the insureds, Defendant promises to pay a predictable amount – the actual cash value of the insured vehicle, including sales tax based on the adjusted value of the vehicle, and the flat tag and transfer fee amounts – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

35. The promise to pay the ACV of the total-loss vehicle is the same promise to pay the same amount irrespective of whether 1) the total-loss vehicle was a gift and the insured paid nothing therefor; 2) the insured procured an excellent deal and underpaid for the total-loss vehicle;

6

3) the insured procured an average deal and paid exactly what the total-loss vehicle was worth; or

4) the insured procured a bad deal and overpaid for the total-loss vehicle.

36. Similarly, the promise the pay the ACV of the total-loss vehicle is the same promise to pay the same amount irrespective of whether 1) the insured procures a replacement vehicle that is more expensive than the total-loss vehicle; 2) the insured procures a replacement vehicle that is less expensive than the total-loss vehicle; or 3) the insured does not replace the total-loss vehicle at all.

## PAYMENT OF SALES TAX AND MANDATORY FEES

37. Sales tax, title transfer fees, and tag transfer fees are examples of elements of the FTLP owed to insureds in the event of a total-loss.

38. Well-established case law and principles of insurance make clear that the "market value" of insured property includes costs necessarily incurred in replacing the insured property.

39. By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.

40. Nevertheless, Defendant declines to include such costs in making the purported ACV payment to total-loss insureds – specifically excluding taxes, tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

41. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

42. Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of

Plaintiff's policies.

43. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

44. Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle, including sales tax, title transfer fees, and tag transfer fees; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

45. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

46. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

47. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

48. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and

judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

49. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Florida policy issued by Integon Preferred Insurance Company with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

50. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

51. Certification of the above classes is also supported by the following considerations:

   a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;
   b. Counsel in this class action is not aware of any previously filed litigation against Defendant in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and
   c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

52. Although the precise number of class members is unknown to Plaintiff at this time and

can only be determined through appropriate discovery, Plaintiff believes that because Defendant is a large motor vehicle insurers in the State of Florida and writes hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity is established.

53. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms.

54. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including taxes and tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members and Plaintiff suffered the same harm as all the other Class Members. Further, Plaintiff is not subject to any unique affirmative defenses sufficient to render class treatment inappropriate.

55. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

56. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

57. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

58. Defendant's breach of the Insurance Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of the insurance policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages the Class in the future.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

59. The previous paragraphs are hereby incorporated by reference.

60. This count is brought by Plaintiff, individually, and on behalf of the Class Members.

61. Plaintiff was a party to a contract, the Insurance Policy, with Defendant as described herein. *See* Exihbit A. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

62. The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Florida law.

63. Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

64. Defendant, by paying the total loss claim, determined that Plaintiff and each Class

Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

65. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Defendant was obligated to pay Plaintiff and every Class Member the ACV for their respective vehicles.

66. Defendant breached that obligation and failed to make FTLP by declining to include sales tax, title transfer fees, and/or tag transfer fees in making the total-loss payment.

67. Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

68. As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed under the policy, including sales tax, title transfer fees, and tag transfer fees, as well as costs, prejudgment and post judgment interest, injunctive relief and other relief as is appropriate.

69. In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For all other damages according to proof;

4. For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including § 627.428 Fla. Stat.;

5. For costs of suit incurred herein;

6. For pre- and post-judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

By: */s/Scott Edelsberg*

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Jordan D. Utanski, Esq.
Florida Bar. No. 119432
2875 NE 191st, #703
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com
utanski@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Andrew Shamis, Esq.
Florida Bar No. 101754
14 N.E 1st Ave Ste. 1205
Miami, FL 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

**NORMAND PLLC**
Jacob Phillips, Esq.
Florida Bar No. 120130
Ed Normand, Esq.
Florida Bar No. 865590
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: 407-603-6031
jacob.phillips@normandpllc.com
ed@ednormand.com